**Luis A. SOTO GONZALEZ, et al. Plaintiffs**

**v.**

**Cesar REY HERNANDEZ, et al. Defendants**

**No. CIV.02–1102(SEC).**

United States District Court, D. Puerto Rico.

March 18, 2004.

Antonio Borres–Otero, Esq., Fernando L. Gallardo, Esq., Woods & Woods, San Juan, PR, for Plaintiffs.

Eduardo A. Vera–Ramirez, Esq., Landrón & Vera LLP, Centro Internacional de Mercadeo, Guayanbo, PR, Luiselle Quiñones–Maldonado, Llovet Zurinaga & López, PSC, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court is Defendant Cesár Rey's motion for summary judgment (**Dockets ## 46 & 48**). Defendant contends that Plaintiffs have failed to effectively set forth a claim actionable under 42 U.S.C. § 1983 and that, in the alternative, he is shielded form Plaintiffs' claim pursuant to qualified immunity. Plaintiffs have timely opposed Defendant's motion (**Docket # 53**) and, in turn, Defendant has filed a reply to the opposition (**Docket # 59**). Upon careful review of the parties' arguments, the facts surrounding the case and the applicable law, Defendant's motion will be **GRANTED** and Plaintiffs' claims will be **DISMISSED WITH PREJUDICE.**

### Background

Plaintiffs Luis A. Soto González, his wife María Escobar Barreto and their conjugal partnership filed the instant case alleging that Defendants violated Luis A. Soto González's civil rights, protected under 42 U.S.C. § 1983, the First, Fifth and Fourteenth Amendment of the Constitution of the United States of America and the Constitution of the Commonwealth of Puerto Rico. They seek injunctive relief and compensatory damages under Article 1802 of the Civil Code of Puerto Rico (31 L.P.R.A § 5141). Plaintiff Soto alleges in his complaint that in January 2001 the Popular Democratic Party (PPD) administration offered him the position of Director of the Mathematics Program of the Puerto Rico Department of Education. He accepted, however, he was later informed that the appointment had been cancelled because of his political affiliation to the New Progressive Party (NPP). Plaintiff Soto alleges

that he had a property interest over the position and that his rights of freedom of speech and association under the First Amendment and his right to due process of law under the Fifth and Fourteenth Amendments were violated since he was denied said position because of his political affiliation. On the other hand, Defendant argues that Soto was never appointed to the position, therefore, he never acquired a property right over said position and, even assuming *arguendo* that he was appointed, said position is one of trust. Consequently, said appointment is not protected under First, Fifth or Fourteenth Amendment of the Constitution.

### Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28 (1stCir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989); *Medina Munoz v. R.J. Reynolds Tobacco,* 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra,* § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martinez v. Colon,* 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, not room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an

absence of evidence to support the non-moving party's case", *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1984); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mutual Life Assurance Company of America,* 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue .... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina Munoz,* 896 F.2d at 8, (*quoting Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

Then applicable Local Rule 311(12) (now codified as Local Rule 56(b)), moreover, requires the moving party to "file annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried ...." Unless the non-moving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.* This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown,* 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the non-movant's case down the road toward an early dismissal." *Tavarez v. Champion Products, Inc.,* 903 F.Supp. 268, 270 (D.P.R.1995).

In the instant case both parties have submitted statements of uncontested facts. However, neither party controverted the facts submitted by the opposing party. As such, we can deem accepted all the facts set forth by each of the parties and conclude that, in the instant case, there are no genuine issues as to any material fact. Therefore, for the purposes of this opinion, the Court finds that the following admitted facts are of great importance and relevance:

**1) The position of Director of the Mathematics Program at the Department of Education is a trust position. (Defendant's Statement of Uncontested Facts ¶ 10) (Plaintiffs' Statement of Uncontested Facts ¶ 4)**

**2) Plaintiff was interviewed for the position of Director of the Mathematics Program. (Defendant's Statement of Uncontested Facts ¶ 2) (Plaintiffs' Statement of Uncontested Facts ¶ 3)**

**3) Plaintiff was never appointed to the position or signed any contract document. (Defendant's Statement of Uncontested Facts ¶ ¶ 6 & 31).**

Although Plaintiffs' do not challenge the fact that the position of Director of the Mathematics Program is a trust position, they do argue that said position does not intervene substantially in the implementation of public policy and, therefore, political affiliation is not necessary. In response, Defendant avers that said position does entail policymaking duties which require political party affiliation in order to advance and achieve the goals of the governing administration.

### Applicable Law and Analysis

■ Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights else-

where conferred. *See Graham v. M.S. Connor*, 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In order to establish liability under Section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds* by *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989); *Saugus v. Voutour*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir.1985).

■ Second, a plaintiff must show that the defendant's conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *See Parratt*, 451 U.S. at 535, 101 S.Ct. 1908; *Gutierrez–Rodriguez*, 882 F.2d at 559. This second prong has two aspects: 1) there must have been an actual deprivation of the plaintiff's federally protected rights; and 2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. *See Gutierrez–Rodriguez*, 882 F.2d at 559; *Voutour*, 761 F.2d at 819. In turn, this second element of causal connection requires that the plaintiff establish: 1) for each defendant, that the defendant's own actions deprived the plaintiff of his/her protected rights, *Monell v. Department of Social Services*, 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gutierrez–Rodriguez*, 882 F.2d at 562; *Figueroa v. Aponte–Roque*, 864 F.2d 947, 953 (1st Cir.1989); and 2) that the defendant's conduct was intentional, *Simmons v. Dickhaut*, 804 F.2d 182, 185 (1st Cir.1986), grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional

rights. *See Gutierrez–Rodriguez*, 882 F.2d at 562.

■ To prevail on a political discrimination claim against Defendants, Plaintiff must establish that: 1) she engaged in constitutionally protected conduct; and 2) that this conduct was a substantial or motivating factor in an adverse employment decision affecting her. *See Mt. Healthy City School District Board v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Padilla–Garcia v. Rodriguez*, 212 F.3d 69, 74 (1st Cir.2000). To meet this burden, Plaintiff must show that there is a causal connection linking Defendant's conduct to her political beliefs. *See LaRou v. Ridlon*, 98 F.3d 659, 662 (1st Cir.1996).

■ Under the Fourteenth Amendment of the Constitution, no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. IV, § 1. In order to establish a procedural due process claim under 42 U.S.C. § 1983, **Plaintiff must first prove that he has a property interest as defined by state law** and, second, that Defendants, acting under color of state law, deprived her of that property interest without a constitutionally adequate process. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 30 (1st Cir.1991)(emphasis ours). In addition, the party who asserts that governmental action violates the Equal Protection Clause must show that she is "the victim of intentional discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Therefore, in order to state a claim under the Equal Protection Clause, Plaintiff must prove not only that Defendants were aware of her political affiliation at the time of his actions, but also that they acted because of his political affiliation. *See Per-*

*sonnel Administrator v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979).

 In the case at hand, Plaintiff has blatantly failed to show that he had property interest over the Director of Mathematics Program position. The record indicates that he was considered for the position and was interviewed. Although the interview process concluded, no employment contract documents were signed nor was any appointment made. Plaintiffs have not contested these facts and hence, they cannot now claim property over a position to which Plaintiff Soto was never appointed. *See Long v. Illinois Municipal Electric Agency,* 90 F.Supp.2d 181 (D.Ill.2000) (offer letter to employee did not create an implied contract of employment or a property interest). Accordingly, we find that Plaintiff Soto's constitutional rights were not violated in any way.

 Even if we were to assume *arguendo* that Plaintiff Soto might have had a legitimate expectation of property right over the position of Director of the Mathematics program, Defendant could have dismissed him without consequence from said appointment due to the fact that said position is one of trust. Unlike career employees, a trust employee's position is intertwined with policymaking and terminable without cause. "The conditioning of public employment on political affiliation can survive constitutional challenge only if it furthers a vital governmental interest by a means least restrictive of First Amendment freedoms." *Elrod v. Burns,* 427 U.S. 347, 360, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

 The question of whether a person has a constitutionally protected property interest is answered by an independent, extra-constitutional source such as state law. *See, Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 53 (1st Cir. 1990) (*citing Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Under Puerto Rico law, a career position is a constitutionally protected property interest. *Kauffman v. Puerto Rico Tel. Co.,* 841 F.2d 1169, 1173 (1st Cir.1988). However, employees appointed to trust positions or employees who are illegally hired for career positions are "neither invested nor entitled to the due process protections which inure to their legally hired counterparts." *Correa–Martinez,* 903 F.2d at 54 (*citing Rosario–Torres v. Hernandez–Colon,* 889 F.2d 314, 319 (1st Cir.1989)). *Figueroa Montes v. Foy,* 272 F.Supp.2d 168 (D.P.R.2003)(Regional Director for Center for Collection of Municipal Contributions for Humacao (CRIM) had no constitutionally protected property interest in continued employment under Puerto Rico law, where admitted facts revealed that he occupied trust position.)

 The First Circuit has recognized that employees in confidential positions are exempted from First Amendment protection regarding politically motivated dismissals. *Vazquez Rios v. Hernandez Colon,* 819 F.2d 319 at 324 (1st Cir.1987); *Santiago–Correa v. Hernandez–Colon,* 835 F.2d 395, 397 (1st Cir.1987); *Morales–Narvaez v. Rossello,* 852 F.Supp. 104 (D.P.R.1994). "The bottom line is that policymakers, and those who work in ongoing and intimate proximity to them, cannot reasonably expect *Elrod–Branti* insulation in their fundamentally political jobs." *Vazquez Rios,* 819 F.2d at 325. Accordingly, the removal of employees from their trust positions is permissible if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Gonzalez v. Foy,* 286 F.Supp.2d

223, 231 (D.P.R.2003); *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 240 (1st Cir.1986) (en banc) (*quoting Branti,* 445 U.S. at 518, 100 S.Ct. 1287).

In *Branti v. Finkel,* the Supreme Court held that "the ultimate inquiry ... is whether the hiring authority can demonstrate that party affiliation in an *appropriate requirement for the effective performance* of the public office involved."[1] 445 U.S. 507, 519, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (emphasis added). The *Elrod–Branti* doctrine protects government officials who make employment decisions based on political affiliation, but the protection is not absolute. *Jimenez–Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241 (1st Cir.1986). "The *First Amendment* must yield to the vital interest of preserving representative government whenever elected officials choose to replace underlings employed in 'policymaking' or 'confidential' positions." *Berrios–Cintron v. Cordero,* 976 F.Supp. 110, 114 (D.P.R.1997). In *Jimenez–Fuentes,* the First Circuit established a two-step analysis designed to aid the court in determining if political affiliation is an "appropriate requirement for the effective performance of the public office involved." 807 F.2d at 241.

The first step of the *Jimenez Fuentes* approach is to ask "whether the position at issue, no matter how policy influencing or confidential it may be, relates to partisan political interests ... [or] concerns." 807 F.2d at 241 (*quoting Branti,* 445 U.S. at 519, 100 S.Ct. 1287). Second the court must determine whether

"the particular job resembles that of a policymaker, a communicator, or a privy to confidential information." *Id.* at 242. For a position to fit within the *Elrod–Branti* exception, both steps of the *Jimenez–Fuentes* test must be satisfied. If the first step is not met, the court need not proceed to the second step.

To meet the requirements of the first step, the position "need only involve decision making on issues where there is room for political disagreement on goals or their implementation." *Mendez–Palou v. Rohena–Betancourt,* 813 F.2d 1255, 1258 (1st Cir.1987). The second step involves a further inquiry into the "inherent powers and privileges of the position ... and not to the duties actually carried out by a particular employee." *Jimenez Fuentes,* 807 F.2d at 241.

In the context of a political discrimination claim, the issue whether an employee holds a "trust position" constitutes a conclusion of law rather than a statement of fact. *Garcia–Sanchez v. Roman Abreu,* 270 F.Supp.2d 255, 262 (D.P.R.2003). Facts in that context are rather the official duties of the employee from which it is for the Court to determine whether the position is one for which political affiliation is an appropriate requirement. *Id.*

In the instant case, the parties have submitted a certification by the Deputy Secretary of Human Resources of the Department of Education which describes the positions of Directors of Programs along

---

1. "Representative government needs a certain amount of leeway for partisan selection of agents in order to work ... In order for a new administration to be given an opportunity to fulfill expectations, it must have available and also appear to have available significant facilitators of policy, people who have the personal and partisan loyalty, initiative,

and enthusiasm that can make the difference between the acclaimed success of a government agency or program and its failure or, more typically, its lackluster performance. The presence of such persons advances the goals of representative government." *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241 (1st Cir.1986).

with their respective responsibilities and duties. *See* **Defendant's Statement of Uncontested Exhibit 1; Plaintiffs' Statement of Uncontested Facts Exhibit A.** In its pertinent part, the document establishes the following:

1) Directors of Programs and Executives are positions of Trust. They both manage the different Programs of the Department of Education, including Math, Social Studies, Science, Spanish and English Programs.

2) Program Directors **manage, plan, organize, coordinate and supervise** the work assigned to the Program under his/her care.

3) Program Directors **develop norms and procedures**, outlines work programs and interpret statutes and regulations applicable to the matter under his/her responsibility.

4) Program Directors **coordinate interagency efforts,** in such matters that so require.

5) Program Directors **outline work plans based on the need of the program attune to the vision, goals and program objectives of the Department of Education.**

6) Program Directors identify problems affecting the evaluation and assessment process and **present relevant recommendations** to solve the same.

7) Program Directors **develop**, in coordination with Regional Directors, School Superintendents and School Directors, the tests and other evaluation and assessment instruments necessary in the schools in order to assure the achievement of the Program objectives.

8) **Observes and advises on the faithful compliance of the goals and objectives of the Department of Education and programs under his supervision.**

First of all, we note that the Certification clearly states that the Directors of Programs and Executives are positions of **trust.** The job description clearly establishes that the Mathematics Program Director Position is sufficiently close to the Education Department policymakers to warrant its trust status. Second, the person who holds the position of Mathematics Program Director collaborates and participates in the development, interpretation and implementation of the public policy of the educational system. It is fair to say that in cases in where a position such as the one above is involved, the Secretary of Education needs a person he/she can trust in order to implement the vision and policies of the administration. Therefore, we find that the position of Program Director entails fundamental and essential policy implementation responsibilities and duties that justify the need for political affiliation as an appropriate requirement for such a trust position. As such, the fact that Plaintiff is not affiliated with the governing party is a valid reason to deny him the post of Program Director in the Education Department. Accordingly, all of Plaintiffs' claims for violations to Plaintiff Soto's civil rights due to political discrimination will be **DISMISSED WITH PREJUDICE** against all Defendants.

### Supplemental Jurisdiction

Since this is not a diversity case, the power of the federal court to hear and to determine state law claims depends on the presence of at least one substantial federal claim in the lawsuit. *Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1996)); *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (emphasizing that exercise of pendent jurisdiction is at the district court's discretion). In the case at

hand, federal jurisdiction hinges only on the above mentioned federal claims against Defendants. Since Plaintiffs' federal claims will be dismissed, we will exercise our discretion and not extend our supplemental jurisdiction over Plaintiffs' Commonwealth claims against all Defendants and, therefore, they will be **DISMISSED WITHOUT PREJUDICE.**

### Conclusion

For the reasons stated herein, Defendant's motion is **GRANTED** and Plaintiffs' claims under 42 U.S.C. § 1983, the First, Fifth and Fourteenth Amendments of the Constitution of the United States of America and the Constitution of the Commonwealth of Puerto Rico will be **DISMISSED WITH PREJUDICE.** In addition, Plaintiffs' claim under Article 1802 of the Puerto Rico Civil Code is **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**