Elisa SANTIAGO–PEREZ, et al., Plaintiffs,

v.

STATE INSURANCE FUND CORPORATION, et al., Defendants.

Civil No. 05–1625 (GAG).

United States District Court, D. Puerto Rico.

Nov. 5, 2007.

---

236

Efrain Maceira–Ortiz, Urb. Perez Morris, San Juan, PR, for Plaintiffs.

Francisco Ojeda Diez, Esq., P.R. Department of Justice–Federal Litigation, San Juan, PR, Johanna M. Emmanuelli–Huertas, Esq. and Carmen Edith Torres–Rodriguez, Esq., Ponce, PR, for Defendants.

## OPINION AND ORDER

GUSTAVO A. GELPI, District Judge.

Plaintiffs Hector Efrain Perez Perez ("Perez"), his wife and their conjugal legal partnership (hereinafter collectively "plaintiffs") filed this suit alleging defendants [1] violated Perez' constitutional rights under the First Amendment of the United States Constitution. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging claims of political discrimination, retaliation, and procedural due process,[2] as well as state law claims under Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141. Defendants timely moved for summary judgment solely as to the Section 1983 causes of action. After a thorough review of all pleadings and pertinent law, the court **GRANTS** defendants' motion for summary judgment (Docket No. 88).

### I. Summary Judgment Standard

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial."

---

1. State Insurance Fund Corporation, Nicolas Lopez Pena, Luis Ramos, Salvador F. Rovira Rodriguez, Luis A. Villahermosa Martinez, Felix A. Ortiz Collazo, Luis Ramos Navarro, Nelly E. Correa De Leon, Rafael Cabrera Cotto, Gloria Oliveras, the conjugal partnership of all codefendants, ABC and XYZ Insurance Company (hereinafter collectively "defendants") were all named defendants in the original complaint. *See* Docket No. 1. The court dismissed all claims against Luis Ramos–Navarro with prejudice. *See* Docket No. 70.

2. The court previously dismissed with prejudice plaintiffs' claims of equal protection, substantive due process, 42 U.S.C. § 1986, Article II Sections 1, 6, and 7 of the Constitution of the Commonwealth of Puerto Rico and Article 1803 of the Puerto Rico Civil Code. *See* Docket No. 56. The court noted that Perez' wife only brought a claim under Article 1802 of the Puerto Rico Civil Code. *See id.*

Fed.R.Civ.P. 56(e). When deciding a motion for summary judgment, the court must view the record in the light most favorable to the party opposing summary judgment, including all reasonable inferences in the nonmoving party's favor. *See id.* "If, after canvassing the material presented, the district court finds *some* genuine factual issue remains in the case, whose resolution one way or the other *could* affect its outcome, the court must deny the motion." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added). "The movant's burden is particularly rigorous when the disputed issue involves questions of motive or intent, since in these cases jury judgments about credibility are typically thought to be of special importance." *Lipsett v. Univ. of P.R.,* 864 F.2d 881, 895 (1st Cir.1988).

## II. Relevant Facts and Procedural Background

The court derives the following factual summary primarily from the parties' statements of material facts. *See* Docket Nos. 88, 99 and 105. Consistent with the summary judgment standard, the court states the facts in the light most favorable to plaintiffs. *See Iverson v. City of Boston,* 452 F.3d 94, 98 (1st Cir.2006). Additionally, in accordance with Local Rule 56, the court credits only facts properly supported by accurate record citations. *See* D.P.R. Local Rule 56(e).

The process to occupy a position at the State Insurance Fund Corporation ("SIFC") is as follows: (1) a division of the agency makes a request and sends it to the budget department for approval; (2) once approved, the recruitment department prepares a job announcement and posts it for a specific period of time; (3) the applicants submit their documents; (4) the appointments department evaluates the applications, certifies the top ten candidates, and sends the list to the requesting division; (5) the division interviews the certified candidates; (6) the interviewer selects a candidate for the position and recommends her to the administrator; (7) the administrator appoints the candidate; and (8) the human resources department makes a change report to notify payroll.

On August 20, 2004, SIFC posted a job announcement for position 6811, Associate Sub-Director of the Regional Services Area, to be located at its Central Office in San Juan. The minimum requirements for the position were a bachelor's degree and nine years of "progressive experience in executive, administrative and supervisory duties, three of which had to be on complex functions and responsible of two operational units related with regional services." Docket No. 88, Exh. A pp. 108–09, 115 and Exh. D p. 12. Perez timely filed his application for the position. SIFC's appointments division screened thirty-one applicants, and on September 2, 2004 certified ten employees, including Perez, as eligible for the position. The Operations Bureau, located at the Central Office in San Juan, received the list of the certified employees on September 2, 2004 around 4:00 p.m. Within half an hour SIFC called all of the candidates in the list, and requested their presence immediately at the Central Office in order to interview them.

Perez declined to attend the interview citing several reasons: (1) he worked[3] in Arecibo[4] and due to the rainy weather it would take him too long to arrive at San Juan; (2) he had not received any notice regarding the interview; and (3) he had to attend a prior commitment that evening.

---

**3.** Perez is still employed at SIFC as an Insurance Specialist IV in the Arecibo Regional Office.

**4.** The court notes that Arecibo is located approximately 80 kilometers from San Juan.

Other candidates declined to interview also. One candidate, Eneida Velazquez ("Velazquez"), requested to arrive late due to a prior commitment, and was accommodated. Velazquez' interview took place around 8:00 p.m. Defendant Rafael Cabrera ("Cabrera") interviewed the candidates that attended. Defendant Nelly Correa de Leon ("Correa") walked into Cabrera's office while he was interviewing Defendant Gloria Oliveras ("Oliveras") and asked her a few questions. The interviewing process lasted until 9:00 p.m. because September 2, 2004 was the last day SIFC could make appointments to public office due to an electoral ban.[5] Cabrera selected Oliveras for the position because of her knowledge of the company and the areas she would supervise. On September 8, 2004, SIFC sent Perez a letter informing him that another candidate had been selected for the position, and of his right to appeal that decision. Perez did not appeal SIFC's decision.

Perez acknowledges that all certified candidates were qualified for the position. Perez testified that candidate Juan Ramirez ("Ramirez") is more qualified than him for the position, but that Oliveras is not. Perez identified certified applicants Ramirez, Angel Melendez, Migdalia Lebron and Ewin Padilla as affiliated with the New Progressive Party ("NPP"). Perez is affiliated with the NPP political party. Correa was aware of Perez' NPP affiliation. Cabrera has supported financially the Popular Democratic Party ("PDP") in the past. Oliveras is also affiliated with the PDP. Oliveras did not discuss the position with anyone involved in the appointment process.

On June 7, 2004 Perez settled a lawsuit against SIFC where he alleged political discrimination. Cabrera and Correa did not know about Perez' prior lawsuit against SIFC.

## III. Discussion

### A. Section 1983 Generally

 Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Section 1983 does not create substantive rights. Rather, the statute provides a procedural mechanism for enforcing federal constitutional or statutory rights. *See Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Therefore, a Section 1983 plaintiff must identify the particular federal right that he seeks to enforce via judicial proceedings. In order to prevail in a Section 1983 claim, a plaintiff must demonstrate that the defendant (1) acted under color of state law and (2) deprived him of the identified federal right. *See Cepero–Rivera v. Fagundo,* 414 F.3d 124, 129 (1st Cir.2005) (quoting *Romero–Barcelo v. Hernandez–Agosto,* 75 F.3d 23, 32 (1st Cir.1996)).

 A defendant incurs Section 1983 liability only if he was personally involved in the deprivation of rights asserted by a plaintiff; a defendant may be found liable

---

5. SIFC filled 46 job announcements on September 2, 2004.

only on the basis of his own acts or omissions. *See id.; see also Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989); *Rosado De Velez v. Zayas,* 328 F.Supp.2d 202, 209 (D.P.R.2004). A plaintiff may demonstrate personal involvement by showing an affirmative link between the deprivation and the defendant's conduct. *See Cepero–Rivera,* 414 F.3d at 129; *see also Aponte Matos v. Toledo Davila,* 135 F.3d 182, 192 (1st Cir.1998). "That affirmative link must amount to 'supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference.'" *Aponte Matos,* 135 F.3d at 192 (quoting *Lipsett v. Univ. of P.R.,* 864 F.2d 881, 902 (1st Cir.1988)).

 In order for a supervisor to be found liable under Section 1983, a plaintiff must show: (1) that the supervisor's own acts or omissions deprived plaintiff of a constitutionally protected right; (2) that his "conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others;" and (3) that there was "an 'affirmative link' between the street level misconduct and the action or inaction of supervisory officials." *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d at 562 (quoting *Woodley v. Town of Nantucket,* 645 F.Supp. 1365, 1372 (D.Mass. 1986)). An important factor in determining whether supervisor liability exists is "whether the official was put on notice of behavior which was likely to result in the violation of the constitutional rights of citizens." *Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 93 (1st Cir.1994) (quoting *Lipsett v. Univ. of P.R.,* 864 F.2d 881, 902 (1st Cir.1988)). Nonetheless, supervisory liability does not require a showing that the supervisor had actual knowledge of the offending behavior. A supervisor can "be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness." *Maldonado–*

*Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994).

In this case, the parties do not dispute that all of the defendants except Oliveras acted under color of state law. Defendants aver that Oliveras was merely a participant in the appointments process, and did not have any control over the circumstances that surrounded it. Plaintiffs aver that Oliveras was involved in the discriminatory scheme. Regarding the second element of the Section 1983 claim, Perez alleges that defendants deprived him of his freedom of speech under the First Amendment, retaliated against him due to his exercise of his freedom of speech under the First Amendment, and deprived him of procedural due process under the Fourteenth Amendment.

### 1. Political Discrimination

 The First Amendment protects a government employee who does not occupy a trust or policy-making position from adverse employment actions based upon the employee's political affiliation. *See Peguero–Moronta v. Santiago,* 464 F.3d 29, 45 (1st Cir.2006). To carry his *prima facie* burden in a political discrimination case, the plaintiff must demonstrate, with direct or circumstantial evidence, that he engaged in constitutionally protected conduct and that the protected conduct was a substantial or motivating factor behind the contested employment action. *Id.*

 Once the plaintiff satisfies his *prima facie* burden, the defendant must show that he would have taken the same action regardless of the plaintiff's political affiliation and that he would have taken such action for constitutional reasons. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 286–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also Velez–Rivera v. Agosto–Alicea,* 437 F.3d 145,

153–54 (1st Cir.2006). If the defendant successfully asserts a *Mt. Healthy* defense, then the plaintiff may attempt to discredit the proffered constitutional reason with either direct or circumstantial evidence. The plaintiff may still prevail if he can show that he would not have received the same treatment "but-for" his political affiliation. *See Velez–Rivera,* 437 F.3d at 153–54; *see also Acosta–Sepulveda v. Hernandez–Purcell,* 889 F.2d 9, 13 (1st Cir.1989).

 In this case, Perez alleges that the defendants acted in a concerted way to give him short notice to the interview because of his affiliation to the NPP. Perez alleges that the short notice lead to his non-attendance, and thus effectively deprived him of the position. There is no evidence, however, in the record before the court to suggest such a discriminatory scheme by the defendants. All of the certified applicants were called on short notice to interview, NPP affiliates and PDP affiliates alike. The high number of open positions at the time and upcoming electoral ban were crucial factors in the deliberate speed of the interview process for the position. The mere fact that Perez is an NPP and Oliveras is a PDP is insufficient to support the *prima facie* case of political discrimination. Therefore, summary judgment in favor of defendants is warranted.

### 2. First Amendment Retaliation

 In order to determine if the plaintiff suffered a violation of his First Amendment rights, the court analyzes: (1) whether the speech involves a matter of public concern or of matters only of personal interest to the employee; (2) whether, when balanced against each other, plaintiff's and the public's First Amendment interests outweigh the government's interest in functioning efficiently; and (3) whether the protected speech was a substantial or motivating factor in the adverse employment action against the plaintiff.

*See Jordan v. Carter,* 428 F.3d 67, 72 (1st Cir.2005). If the court determines that only personal speech is involved, "then its First Amendment value is low, and a federal court is not the appropriate forum in which to review the wisdom of internal decisions arising therefrom." *Id.* at 72–73 (citing *Fabiano v. Hopkins,* 352 F.3d 447, 453 (1st Cir.2003) (citations omitted)).

 In this case, Perez alleges his protected speech is the lawsuit he filed and settled with SIFC a few months prior to the appointment process. Specifically, Perez alleges the defendants retaliated against him by giving him short notice to the interview because he filed a political discrimination lawsuit against some of them. However, Perez does not provide the court with any details as to the substance of the alleged protected speech, i.e. the prior lawsuit, in order to analyze whether it involved a matter of public concern or not.

Despite not needing to proffer it, defendants provided the court a summary of the plaintiff's allegations in the prior lawsuit. Perez sued SIFC because he did not receive certain salary increases in accordance to a 1999 regulation, which SIFC had not implemented when the new administration took over. Perez alleged that the reason for this was his political affiliation. Nevertheless, when Perez filed his complaint in 2003, SIFC had already implemented the 1999 regulation and the parties settled the lawsuit. Perez sought only money damages for himself in the prior lawsuit. Therefore, Perez' speech was not protected because it was personal in nature.

Furthermore, in this case, the circumstances surrounding the appointment process do not indicate any retaliatory conduct or improper motivation by the defendants. There is ample evidence on the record that all certified applicants

were called to interview on the same day, around the same time. The record supports defendants great interest in conducting the interview process on short notice in order to be able to appoint a qualified candidate prior to the electoral ban[6]. Therefore, since plaintiffs have not presented a valid First Amendment retaliation claim, summary judgment in defendants' favor is appropriate.

### 3. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. A plaintiff asserting a procedural due process claim must show that he had a property interest as defined by state law and that the defendant, acting under color of state law, deprived him of that property interest without constitutionally adequate process. *See Mercado–Alicea v. P.R. Tourism Co.*, 396 F.3d 46, 53 (1st Cir. 2005); *see also PFZ Props., Inc. v. Rodriguez*, 928 F.2d 28, 31 (1st Cir.1991). In order "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it ... He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In this case, Perez alleges that he had a property interest in interviewing for the position, and defendants actions deprived him of said property interest. In a similar case, where the plaintiff had interviewed and been offered the position, but no employment contract had been signed, the court held he had not acquired a property interest in said position because he was never appointed. *See Soto Gonzalez*

*v. Rey Hernandez*, 310 F.Supp.2d 418, 425 (D.P.R.2004); *see also Morris v. Lindau*, 196 F.3d 102, 115–16 (2d Cir.1999) (police chief's son was not deprived of property interest by being denied interview with police department). Perez had no property interest in interviewing for the position. SIFC granted Perez an interview, and he declined to participate. There are no guarantees that if Perez had interviewed he would have been selected for the position. Since Perez was not deprived of a constitutionally protected right, he has no cause of action for a violation of procedural due process. Accordingly, summary judgment on plaintiffs' procedural due process claim is warranted.

### IV. Personal Involvement

On August 9, 2006 the court issued an Order (Docket No. 56) acknowledging defendants' contention that plaintiffs had failed to comply with Fed.R.Civ.P. 8(a). The court ordered plaintiffs to amend their complaint and allege specific acts undertaken by defendants Lopez Pena, Ramos, Rovira, Villahermosa, Ortiz Collazo, Ramos Navarro, Correa, Cabrera and Oliveras. Plaintiffs amended their complaint (Docket No. 57), but again failed to comply with Fed.R.Civ.P. 8(a). Therefore, the court hereby dismisses all federal claims as to the above mentioned defendants.

### V. State Law Claims

Since no federal claims to ground jurisdiction remain in this case, plaintiffs' supplemental state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### VI. Conclusion

For the foregoing reasons, defendants' motion for summary judgment (Docket

---

6. The record does not suggest, and plaintiffs have not proffered, that all short-notice pre-

electoral ban appointments went exclusively to PDP affiliates.

No. 88) is hereby **GRANTED.** This case is thus dismissed. All state law claims are also dismissed but without prejudice.

**SO ORDERED.**